Stroupper vs. McCauley.

---

MARY A. STROUPPER, administratrix, plaintiff in error, vs. HENRY McCAULEY et ux., defendants in error.

(By TWO JUDGES.) The judgment on a mechanic's lien, under the Act of December 22, 1834, made general by Act of December 28, 1837, is not a judgment in rem, and hence does not conclude those claiming under a title adverse to the title of him who created the lien. 5th March, 1872.

Mechanic's liens. Judgments in rem. Before Judge JOHNSON. Muscogee Superior Court. May Term, 1871.

For the facts, see the opinion.

B. A. Thornton; W. F. Williams; Blandford & Crawford, for plaintiff in error.    A judgment *in rem* concludes the world: Gr. Ev., secs. 541, 542, 543; Story on Conf. of Laws, secs. 593, 597: note 2, and cases cited; R. Code, sec. 3774; Cobb's N. Dig., 555.

Montgomery, Judge.

This was a bill, brought by defendants in error, to compel the defendant, the present plaintiff in error, to deliver a house and lot in the city of Columbus to complainants, and for an account of the rents.   The material facts are that one Peter Nolan, the father of Sarah McCauley, on his marriage with her mother, entered into a marriage contract, whereby he settled the premises in dispute upon his intended wife and her issue.   Sarah McCauley was the only issue.   Nolan left the State some short time after his marriage, which was in 1848, and has never been heard of since.   Shortly afterwards, his wife died, and John B. Stroupper, her brother-in-law, took out letters of guardianship for the child, then two years old. The letters were granted in November, 1851.   Before Nolan left the State, he employed one W. B. Robinson, a mechanic, to put repairs upon the house to the amount of $331 75. Robinson recorded his mechanic's lien, and sued it to judgment *against Nolan*, under the Act of December 22d, 1834, made general by Act of December 28th, 1837.   The trustee, under the marriage settlement, was not a party to the suit, nor does it appear that he authorized the repairs.

In March, 1851, the property was sold under the *fi. fa.* issued upon the judgment, and bought by John B. Stroupper, and the title made to him, individually, by the sheriff. Stroupper died in possession of the property, and his wife, the plaintiff in error, became administratrix, and has possession of the property.

Henry McCauley married Sarah Nolan, and the bill is

brought by them for the purposes stated.    The jury found for complainants.

There are several assignments of error, but the only one relied on by counsel for plaintiff in error, was the refusal of the Court to give the following charge: "That the said judgment, in favor of Robinson, to enforce his mechanic's lien, is a judgment *in rem*, and is conclusive upon everybody, and a sale of the property mentioned in said judgment, under the same, divested the title of the true owner, although such owner may have been a married woman or minor, and passed the title to Stroupper." If the premise of the counsel for the defendant is true, the conclusion he draws would necessarily follow.

What is a judgment *in rem?* "A judgment *in rem* is founded on a proceeding, not as against the person, as such, but against the thing or subject-matter itself, whose state or condition is to be determined. It is a proceeding (*i. e.*, the Judge means to say the *proceeding in rem* is) to determine the state or condition of the thing itself, and the judgment is a solemn declaration upon the *status* of the thing; and it *ipso facto* renders it what it declares it to be.    The probate of a will is a familiar instance of a judgment *in rem*.    The judgment is upon the thing itself; and when the proper steps required by law are taken, the judgment is conclusive upon all the world, and makes the instrument just what the judgment of the Court declares it ought to be."    " Proceedings *in rem* may be, and often are, upon personal chattels, directly declaring the right to them, in such cases.    The proceeding is for the supposed violation, by the property (so to speak) of some public law or regulation, by which it is alleged that the title of the former owner has become divested.    The property being seized, a proceeding is then instituted against it, upon an allegation stating the cause for which it has been forfeited; upon which public notice is given, in some prescribed form, to all persons to appear and contest the allegation: Woodruff *vs.* Taylor, 20 Vermont, 65.

The Court, doubtless, had in view proceedings against goods for violations of the revenue laws. But this is not the only proceeding against personal chattels, which is a proceeding *in rem.* The familiar instance of a proceeding against a vessel and her cargo, for repairs, supplies, seamen's wages, salvage, etc., in a Court of Admiralty, is an illustration.

Again : " A judgment of outlawry not only declares the party an outlaw, but renders him so, and is, therefore, a judgment *in rem :* " Herman's Law of Estoppel, chapter I., p. 110, *et seq.*

" Proceedings in attachment are in the nature of, but not strictly a proceeding *in rem.* A proceeding *in rem* is that in which the process is served on the thing itself ; and the mere possession of the thing itself, by the service of the process and making proclamation, authorizes the Court to decide upon it, without notice to any individual whatever."
" The proceedings in attachment will not, in any way, affect the *status* of the property as to other persons than the parties to the record, and those claiming under them : " Herman's Law of Estoppel, chapter I.: "Judgments *in rem,*" page 110 to 129; Drake on Attachment, section 5; Marshall, Chief Justice, in Mankin *vs.* Chandlee, 2 Brockenbrough, 125; Megee *vs.* Berme, 39 Pennsylvania State Reports, 50. " The limited proceedings *in rem,* before mentioned, (in attachment) are not based on any allegation that the right of property is to be determined between any other persons than the parties to the suit ; no notice is sought to be given to any other persons, and the judgment being only as to the *status* of the property, as between the parties of record, it is as to all other persons a mere nulity: " Woodruff *vs.* Taylor, 20 Verm., 76. "A foreign attachment, under the law of Virginia, (and I apprehend the same is true under the law of Georgia,) is not a proceeding *in rem.* It is a suit by a plaintiff against a defendant, and a decree in such a case is conclusive evidence only against parties and privies. In every

case where parties are necessary to give the Court cognizance of the cause, the decree, the judgment or the sentence binds those only (with some few exceptions standing on particular principles,) who are parties or privies. If a party is necessary, it follows that the party should be one who has the real interest, and to secure this, the interest of persons who are not parties cannot be affected:" Mankin *vs.* Chandlee, 2 Brockenbrough, 125. "The same rule applies to proceedings in replevin, where the authority to seize specific property is given solely with a view to the determination of the right of property between the plaintiff and defendant; the judgment will not estop the subsequent assertion of a distinct and adverse title by a third person : Herman's Law of Estop., 131. "All actions brought for the recovery of title to land are in the nature of proceedings *in rem*, whether commenced by service *in personam* or by publication ; yet the judgment is limited to the estate, and to those who have been made parties, either by service of process or by appearance. And the title of third persons is neither barred nor affected by an order or execution based on such judgment:" *Ibid*, 144. The effect and purpose of a proceeding *in rem*, strictly so-called, is to ascertain the right of every possible claimant, and it is instituted on an allegation that the title of the former owner, whoever he may be, has become divested, and notice is given to the whole world to appear and make claim to it :" Woodruff *vs.* Taylor, 20 Vermont, 65.

This is not the only purpose of a proceeding *in rem*, as already stated. There are two classes of judgments *in rem*, 1st. Judgments upon the *status* of individuals; as in judgments of outlawry, divorce, appointment of guardians, administrators, etc. And, 2d, judgments had on proceedings against *property* without suit against the owner. And these last seem to be confined to Courts of Admiralty, as the former are, (with the exception of outlawry) to the Ecclesiastical Courts. Indeed, the general rule is, that Courts of common law do not proceed *in rem*: 1 Kent's Com., (8th Ed.) 379;

3 *Ibid*, 220. Has the Legislature of Georgia given to her Courts this jurisdiction as against *property?* I know of no case, unless our steamboat lien law be so considered, and if it is, it has been decided that State Legislatures have no authority to create maritime liens or confer jurisdiction upon State Courts to enforce such liens by proceedings *in rem.* Such jurisdiction is vested exclusively in the Courts of Admiralty of the United States: Deever *vs.* Steamer Hope, A. L. R., 683. The Belfast, 7 Wall, 634.

Judge Story, and Mr. Greenleaf, after him, say proceedings in attachment "are also treated *as in some sense* proceedings *in rem,* and are deemed entitled to the same consideration:" Story's Conflict of Laws, section 592; 1 Greenleaf, section 342. I think, however, the statement is to be taken with the qualifications laid down in the authors hereinbefore quoted. If, then, a judgment *in rem* is herein correctly set-out, it is very clear that the judgment under consideration is not of that class. It was a *suit* against Nolen. Service doubtless effected on *him,* certainly not on the land. It was not an attack on the title of the land, but a proceeding to subject the land to the payment of Nolen's debt, which necessarily presupposed Nolen's titled valid. It was not a proceeding "to ascertain the right of every possible claimant." Nor was it "instituted on an allegation that the title of the former owner, whoever he might be, had become divested." It was levied on *as the property of Nolen to answer for his debt.* The proceeding sought to obtain a judgment (and did obtain it) by means of which, and by the usual process of a sheriff's sale, *Nolen's* title might be divested, not a judgment declaring that his title, as well as that of every one else, *had become divested at the time of the institution of the proceedings against the property.* It was certainly less of a proceeding *in rem* than an attachment, which we have seen only binds the parties and their sureties.

The principles of the maritime law were certainly not intended by the Legislature to apply so as to place the me-

chanic in the position, with reference to the property, he would have been in had he repaired a foreign vessel in the port of Savannah, (he could not proceed *in rem* against a home vessel, 1 Kent, 379, unless specially authorized by statute.) Those principles are founded on reasons entirely inapplicable to a case like the present. In the case of the vessel there is no owner upon whom process can be served, and the property itself is liable to take the wings of the morning and fly to the uttermost parts of the earth at any moment. A vessel under maritime law is treated more as was the debtor under the Jewish law; it is liable to be sold for *its* debts, rather than the debts of its owners, and this in furtherance of the best interests of commerce. In the present case, the owner must be first sued before the property can be subjected.

Had Nolen resided in a county different from the county in which the land lay, would not the suit, provided for by the 6th section of the Act of 1834, have been brought in the county of his residence, and service have been perfected upon *him*, not on the property by seizure? If the position of plaintiff in error be correct, is not a foreclosure of a mortgage a proceeding *in rem?* And of course if it is, it must conclude everybody. Indeed it is much more certainly a proceeding *in rem* than the present, if our universal practice of foreclosing in the Superior Court of the county where the land lies, instead of in the county of the residence of the mortgagor, when he resides in a different county from that in which the land is, is constitutionally correct.

Judgment affirmed.